```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
SHERRY ZOE CORBEIL,

                        Plaintiff,           12-CV-0114(MAT)

              v.                              **DECISION
                                              and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                        Defendant.
_____
```

## INTRODUCTION

Plaintiff Sherry Zoe Corbeil ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income Benefits ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##12, 13.

## BACKGROUND

On April 23, 2009, Plaintiff filed an SSI application alleging disability beginning June 30, 2001, due to psychosis, depression, anxiety, and lower back pain. T. 121-130.[1] Plaintiff's initial application was denied, and she subsequently requested a hearing before an Administrative Law Judge ("ALJ"). T. 87-93. A hearing was

---

[1] Pages of the Administrative Transcript are referred to herein as "T.___."

held in Buffalo, New York before ALJ William M. Weir on February 7, 2011, during which Plaintiff testified and was represented by counsel. T. 29-56. Following the hearing, ALJ Weir issued a written decision on May 25, 2011, finding that Plaintiff was not disabled under the Act. T. 19-39.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Admnistration, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff had not engaged in substantial gainful activity ("SGA") since the application date of April 23, 2009; (2) she had the severe impairment of major depressive disorder with psychotic features;[2] (3) her impairment did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appendix 1, and that she retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, limited to simple, repetitive tasks without more than occasional public contact; (4) she was able to perform her past relevant work as a dishwasher. The ALJ concluded that Plaintiff was not disabled since April 23, 2009. T. 18-23.

---

[2] Although there is some mention of back pain in Plaintiff's SSI application, the record does not establish the existence of any medically determinable back impairment, and Plaintiff's motion does not address any purported impairment that is not related to her mental health. Pl. Mem. 1-21. As such, only Plaintiff's mental impairment is at issue in this Decision and Order.

2

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 19, 2011. T. 1-6. This action followed. Dkt.#1.

Plaintiff now moves for judgment on the pleadings on the grounds that: (1) the RFC assessment was not supported by substantial evidence and the ALJ failed to follow the "treating physician rule,"; (2) the ALJ did not use the appropriate legal standards in evaluating Plaintiff's subjective complaints; and (3) the ALJ erred in finding Plaintiff capable of her past work. Pl. Mem. (Dkt. #12-1) 1.

The Commissioner has filed a cross-motion arguing that substantial evidence supports the ALJ's finding of no disability. Comm'r Mem. (Dkt. #14) 15-28.

For the following reasons, Plaintiff's motion is granted, and the Commissioner's motion is denied.

## DISCUSSION

I. **General Legal Principles**

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

## II. Medical Evidence

### A. Hospitalization

Plaintiff was hospitalized for five days in June, 2008, on an emergency basis due to increasing confusion and agitation along with auditory hallucinations. T. 215. There, she described being under "under a lot of stress," had an erratic sleep pattern, poor appetite, and difficulty with concentration and attention span. Id. She reported hearing voices about a month prior, which were confusing to her. Id. She had previous hospitalizations for depression and overdose within the past ten years. Id.

Upon examination, Plaintiff was reasonably cooperative, mildly perplexed, and appeared to be distracted, but was not grossly disorganized and did not have a grossly impaired sense of reality. Id. She was treated with her regular dose of Celexa and was given a small dose Risperdal, an anti-psychotic medication. Id. At discharge, Plaintiff was expressive and communicative and agreed to follow-up outpatient treatment. Id.

### B. Medical Care

Plaintiff saw Dr. Carlson, a primary care physician, at Sheridan Medical Group from 2008 to 2010. One week following her June, 2008, hospitalization, she reported that she was doing better, feeling well, and taking her prescribed medications.

4

T. 258. Dr. Carlson noted that Plaintiff had a cooperative attitude, and clear and fluent speech. T. 258. In July, 2008, she reported feeling well and that she had missed her mental health appointments and stopped taking Risperdal, but was still taking Celexa. T. 259. Treatment notes from her September and October visits were essentially unchanged; Dr. Carlson refilled Plaintiff's Celexa and referred her for treatment by a mental health specialist. According to his notes, Plaintiff had not followed-up on Dr. Carlson's recommendation as of October, 2008. T. 262.

On October 2, 2008 she had not taken Risperdal for two months, but reported not hearing any voices. T. 264. She did not institute sleep hygiene measures and complained of feeling confused at times. Id. During that visit Dr. Carlson noted her affect as blunted. Id. By December, 2008, Plaintiff re-started Risperdal and reported feeling well. T. 266. Her psychological evaluation was normal. Id.

Throughout 2009, Plaintiff's psychological examinations by Dr. Carlson were unremarkable; her mood was cooperative, affect appropriate, and speech was clear and fluent. T. 270-73; 477-81. In July, 2009, she reported feeling not rested, despite 9-10 hours of sleep. T. 477. Psychological examination results were essentially unchanged when she returned to Dr. Carlson in October, 2010.

### C.   Mental Health Treatment

Horizon Health Services ("Horizon") records dated November 4, 2008 indicate that Plaintiff self-reported for psychiatric medication management after her discharge from Buffalo General Hospital. T. 286. On that date she told Dr. Belito Arana that she had stopped taking Celexa prior to her hospitalization, and began to feel more depressed with no energy, and eventually started to experience auditory hallucinations. Id. On examination, her mood was mildly depressed with constricted affect. She reported occasional, faint auditory hallucinations and showed slight psychomotor retardation. Her mental status examination was otherwise unremarkable. Diagnoses included major depressive disorder, recurrent with psychotic features, in partial remission. Id. She was to be continued on her prescription medications, and to follow-up with individual counseling. T. 287.

On May 19, 2009, Dr. Richard Wolin of Horizon completed a Medical Assessment of Ability to Do Work Related Activities (Mental). Dr. Wolin rated Plaintiff's abilities in the following areas as "poor," defined as a low level of functioning that would significantly impair and/or preclude performance of simple work tasks: follow work rules; relate to co-workers; deal with the public; use judgment; interact with supervisors; maintain attention/concentration; understand, remember, and carry out simple and detailed instructions; relate predictably in social situations;

and demonstrate reliability. T. 283-84. He further opined that Plaintiff had no ability to understand, remember, and carry out complex job instructions; function independently; or deal with work stress. T. 283-84. Dr. Wolin noted that Plaintiff had difficulty with short-term memory, social behavior, and focus. T. 283. Her condition would deteriorate if she was to return to any type of employment, and she was therefore disabled from full-time competitive employment. T. 284.

Plaintiff followed-up with Dr. Wolin and his staff at Horizon Health Services from November, 2009, to August, 2010. T. 445-48; 472-75. Plaintiff complained of continued depression, but chose not to increase her Celexa on March 2, 2010. During the same visit, her examinations normal but exhibited "blunted" affect. T. 447. The following month, Dr. Wolin noted that Plaintiff was "quite stable" with "some evidence of auditory hallucinations over the winter months." T. 445. Plaintiff's diagnosis of major depressive disorder, recurrent, with psychotic features, was noted to be in partial remission. Id.; T. 473, 475.

On June 28, 2010, Plaintiff reported family problems, and stated she had occasional auditory hallucinations that did not cause fear. T. 475. At her next appointment on August 17, 2010, Dr. Wolin stated that the depression and hallucinations were "largely obviated" on Plaintiff's current medications. T. 473.

Treatment notes from Horizon consistently assess Plaintiff's Global Assessment of Function ("GAF") score at 50. T. 445, 473, 475. The GAF scale, a scale from 0 to 100, may be used to report the clinician's judgment of the individual's overall level of functioning. Amer. Psych. Assoc., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. rev. 2000) ("DSM–IV"). A GAF of 41 to 50 represents "serious symptoms" or "serious impairment" in social, occupational or school functioning. Id. at 34.

**D.   Consultative Examinations**

Plaintiff underwent a psychiatric consultative evaluation on November 6, 2008 by Thomas Ryan, Ph.D. T. 224-27. Since her hospitalization in June, 2008, she had been seeing a counselor twice per week and a psychiatrist every two months. T. 224.[3] She reported sleep difficulties, social withdrawal, irritability, difficulty concentrating, feelings of depression, anxiety, confusion and hearing voices. Her symptoms were relieved with medication at the time. T. 224-25.

Plaintiff's evaluation showed depressed affect, dysthymic mood, minimally impaired recent and remote memory, low to average cognitive functioning, and somewhat limited general fund of information. T. 225. Dr. Ryan concluded that Plaintiff would have no significant limitation in her ability to follow and understand

---

[3] There are no treatment records from Horizon prior to November, 2008.

simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, or perform some complex tasks. T. 226. She could generally make adequate decisions, and had moderate limitations dealing with others and with stress. Plaintiff's psychiatric problems may interfere to some degree on a daily basis. Diagnosis was major depressive disorder with a history of psychotic features. Id.

Shortly thereafter, a Mental Residual Functional Capacity form was completed by State Agency non-examining review physician M. Totin on November 25, 2008. T. 228-30. Dr. Totin opined that Plaintiff had moderate limitations in the following areas: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance/being punctual within customary tolerances; accepting instructions and responding appropriately to criticism from supervisors; and setting realistic goals/making plans independently of others. T. 228-30. He concluded that Plaintiff was able to meet the mental demands of unskilled work. T. 230.

Dr. Totin also completed a Psychiatric Review Technique form, which indicated moderate difficulties in maintaining social functioning; mild restriction of daily activities; mild difficulties in maintaining concentration, persistence, or pace;

and one or two episodes of deterioration of extended duration. T. 242.

A little under a year later, Rachel Hill, Ph.D. performed a consultative psychiatric evaluation on June 17, 2009. T. 410-15. At that time Plaintiff was prescribed Celexa and Risperdal. T. 411. Though Plaintiff was compliant with her medications for about a year, her mother noted some failure to follow through with treatment. Id. Plaintiff reported depressive symptoms, low energy, trouble concentrating, as well as anxiety symptoms and auditory hallucinations. Id. On examination, Plaintiff's grooming was not very good, affect was tense, and intellectual functioning appeared below average. T. 412. Dr. Hill opined that Plaintiff could follow and understand simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks if they were not too difficult and well-known to her; make simple decisions; and relate adequately with other people. T. 413. She did not deal well with stress, with "her greatest difficulty being caused by psychiatric problems." T. 413. Dr Hill assessed that Plaintiff's major depressive disorder with psychotic feature was "currently somewhat in remission" at the time of the consultation. Id.

On October 8, 2009, Dr. D. Mangold, a State Agency review physician, completed a Mental Residual Functional Capacity Assessment form and Psychiatric Review Technique. T. 420-32. He

noted a moderate limitation in most mental activities listed. T. 416-17. Considering Dr. Hill's findings, Dr. Mangold concluded that Plaintiff was mentally able to perform simple, repetitive, competitive work in a low-contact setting. T. 432.

### III. **Non-Medical Evidence**

Plaintiff was 48 years-old on the date of her hearing and had a ninth grade education with a General Equivalency Diploma. T. 34, 153. She had previously held jobs as a cleaner and a dishwasher. T. 148, 156, 204, 224.

At her disability hearing, Plaintiff testified that she could not work because she had difficulties with concentration and memory. She maintained a monthly planner to help her keep appointments and pay bills. T. 34, 37-38. She reported hearing voices, which subsided after she began taking medication and stated that the voices no longer frightened her. T. 35, 41-43. With regard to her depression, Plaintiff told the ALJ that she felt tired all the time and was not motivated to do things, but that she dealt with stress by taking a walk, listening to music, and going to church. T. 36, 48-49, 53.

Plaintiff reported crying spells approximately once a week, and that her medication helped her to stay calm. T. 42. Because her skills with directions were poor, she generally only drove to bingo, church, or to the grocery store, all of which were a few

blocks away from her house. Plaintiff would panic about getting lost while driving. T. 36-37, 44-45.

Plaintiff performed independent self-care activities, including attending appointments, church, social activities such as bingo and concerts, attending family functions, performing chores, cooking, grocery shopping, and caring for her pets. T. 39-40, 166-169, 226, 413. She spoke to her family members daily on the telephone, and watched television for about a half-hour at a time before she lost focus. T. 51-52.

**IV. Analysis**

    **A. The ALJ incorrectly determined that plaintiff's employment as a dishwasher constituted past relevant work.**

In determining that plaintiff was not disabled, the ALJ determined at step four of the five-step disability analysis that the plaintiff "is capable of performing past relevant work as a dishwasher." T. 23. This finding, however, is erroneous as a matter of law. "Past relevant work" is defined in the Social Security Regulations as "work that you have done within the past 15 years, <u>that was substantial gainful activity</u>, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1)(emphasis added). The ALJ, however, had previously determined that plaintiff's employment as a dishwasher, which occurred in 2002, did not constitute substantial gainful activity. Specifically, the ALJ found that although "[t]he claimant did work

12

after her June 30, 2001, alleged [disability] onset date, . . . <u>her earnings from this work activity did not rise to the level of substantial gainful activity</u>." T. 18. (emphasis added). Because the ALJ had previously determined that plaintiff's employment as a dishwasher did not constitute substantial gainful activity, he erred in finding that her employment constituted past relevant work. See <u>Holmes v. Colvin</u>, No. 13cv69, 2014 WL 116598, at *4 (N.D.Fla. Jan. 10, 2014) (ALJ erred at step four when he determined Plaintiff could perform past relevant work that he also determined was not SGA at step one, warranting remand); <u>Machia v. Astrue</u>, 670 F. Supp. 2d 326, 338 (D. Vt. 2009)(ALJ erred in holding that plaintiff could perform past relevant work where past relevant work did not constitute substantial gainful activity).

**B. The ALJ's finding that plaintiff was not disabled because she could perform her past <u>relevant work was not harmless error</u>.**

In many cases, where an ALJ has incorrectly determined that a plaintiff is not disabled because he or she can perform past relevant work, such an error has been found harmless if the ALJ then makes proper findings at step 5 of the five-step disability analysis. See e.g. <u>Lopez v. Astrue</u>, No. 1:11 CV 00310 GSA, 2012 WL 1434991, at *15 (E.D. Cal. Apr. 25, 2012)("even if the ALJ erred in determining Plaintiff could perform his past relevant work because that work did not amount to substantial gainful activity, any error is harmless" where the ALJ's determination at step five is

correct); Johnson v. Astrue, No. 07-CV-647, 2009 WL 1650415, at *6 (W.D.N.Y. June 12, 2009) (explaining that failure to properly examine past relevant work is harmless when ALJ makes a correct ruling at step five); DeKruger v. Comm'r, No. 08-10410, 2009 WL 596123, at * 12 (E.D.Mich. Mar.9, 2009) ("[E]ven though Plaintiff's job as a companion does not appear to rise to the level of [substantial gainful employment] at step four, and thus, should not be considered past relevant work, this Court should still affirm the Commissioner's finding, because the record and the ALJ findings support a step five determination that Plaintiff is not disabled.").

In the instant case, however, the ALJ did not make findings at step 5 of the five-step analysis, and accordingly, his reliance on an erroneous finding at step 4 of the analysis constitutes legal error that requires remand for further proceedings. Specifically, on remand, the ALJ should consider under step 5 of the analysis whether or not plaintiff is capable of performing any work in the national economy given her residual functional capacity.

### C. The ALJ Did Not Properly Evaluate the Opinion of Treating Physician Dr. Wolin.

Plaintiff contends that the ALJ erroneously discounted Dr. Wolin's treating source opinion in determining Plaintiff's residual functional capacity ("RFC"). Pl. Mem. 12-16.

The "treating physician rule" instructs the ALJ to afford a treating physician's opinion controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).

In assessing Plaintiff's RFC, the ALJ found Dr. Wolin's May 19, 2009 Medical Assessment to be of little probative value, and afforded it little weight. T. 23. The ALJ noted Dr. Wolin's findings of "poor" in most areas of functioning as well as his determination that Plaintiff was disabled from full-time competitive employment,[4] to be ambiguous because Dr. Wolin's statement did not indicate "over what period of time it purports to apply, a critical omission in the context of a record delineating clear periods of non-compliance and resulting deterioration in [Plaintiff's] condition." Id.; see T. 284. The ALJ further found that the May, 2009 statement was "inconsistent" with Dr. Wolin's records from one year later. T. 23  The ALJ, however, does not

---

[4] The Commissioner need not grant controlling weight to a treating physician's opinion to the ultimate issue of disability, as this decision lies exclusively with the Commissioner. See 20 C.F.R. § 404.1527(d)(1); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

15

explain how the report, that assessed plaintiff's capabilities and functions as they existed on or before May 19, 2009, could be "inconsistent" with treatment notes from one year later, which presumably reflected her condition at that time. There is no indication in the record (nor any explanation in the ALJ's decision) that Dr. Wolin's April, 2010 finding that the plaintiff was "stable" is inconsistent with his assessment from a year earlier. The fact that a plaintiff's condition may fluctuate over a period of time does not render opinions noting that fluctuation "inconsistent."

Where, however, as here, "an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly ... by making every reasonable effort to re-contact the treating source for clarification of the reasoning of the opinion." Toribio v. Astrue, No. 06-cv-6532, 2009 WL 2366766, at *10 (E.D.N.Y. July 31, 2009) (internal quotations omitted); see also id. ("The ALJ should seek such information when a medical report contains a conflict or ambiguity that must be resolved, [or] the report is missing necessary information."). If necessary, the ALJ must act sua sponte in order to fulfill this duty. Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

Moreover, the ALJ found that Dr. Wolin's May 2009 statement contained a "critical ommission" because it was unclear as to whether or not plaintiff's alleged noncomplaince with treatment aggravated her condition. Because the ALJ believed that Dr. Wolin's opinion contained omissions, he was under an obligation to further develop the record. Rivera v. Astrue, No. 06-CV-3326, 2009 WL 705756, at *7 (E.D.N.Y. Mar. 16, 2009) (holding that an ALJ has a duty to develop the record and the reasons for a treating psychotherapist's opinions).

Finally, there is an unexplained gap in the medical record with regard to Plaintiff's mental health treatment at Horizon. Although the record indicates that she was initially seen by Horizon in November, 2008, and she reported routine counseling and psychiatric visits to consultative examiner Ryan in November, 2008, there are no treatment records related to mental health counseling until Dr. Wolin's Medical Assessment dated May 19, 2009. The next set of treatment notes from Horizon began on March 2, 2010, almost one year later. T. 447. On April 27, 2010, Dr. Wolin wrote that he had not seen Plaintiff since November 24, 2009, but noted that she had been seen by a Nurse Practitioner in February and in March of 2010. T. 445. Neither the November, 2009, nor the February, 2010 visit are documented in the record.

In view of the important role Horizon played in Plaintiff's mental health treatment, which forms the crux of her SSI

17

application, the Court finds that there was reason to believe that the missing information was necessary to properly evaluate Dr. Wolin's opinion as a treating source. It was, therefore, error for the ALJ in failing to re-contact Horizon to determine whether it had the relevant records concerning Dr. Wolin's treatment notes and the basis for his Medical Assessment. Where there are "clear gaps" in the administrative record, the ALJ cannot reject the diagnosis of a treating physician without first attempting to obtain the missing information. See Rosa, 168 F.3d at 79; see also, e.g., Morlando v. Astrue, No. 10cv1258, 2011 WL 4396785, at *4 (An "ALJ's duty to develop the record is especially important in cases involving mental impairment.") (internal quotation omitted).

Because the records are from a treating psychologist and are referenced in the record, and because the ALJ was under a duty to follow through to ensure a complete record, this error requires reversal of the ALJ's decision and remand for compliance with the Commissioner's regulation.

### D.   Remaining Contentions

In light of the conclusion reached by the ALJ with response to substantial gainful activity and the weight to be given to Plaintiff's treating physician's opinion, see Sections A and B, supra, the Court need not address Plaintiff's remaining claims as to the ALJ's credibility determination and whether the RFC was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, Defendant's motion for judgment on the pleadings (Dkt. #13) is denied, Plaintiff's cross-motion for judgment on the pleadings (Dkt. #12) is granted, and this matter is remanded to the Commissioner for the reasons stated above for further administrative proceedings pursuant to 42 U.S.C. § 405(g), sentence four. Upon remand, the ALJ shall reconsider the weight to be given to the opinion of Dr. Wolin, and shall attempt to obtain additional medical records from Horizon, or any other relevant medical source. The ALJ shall consider all evidence in determining the plaintiff's residual functional capacity. Finally, unless the ALJ determines that plaintiff is disabled under the regulations because of her impairments and age, the ALJ shall proceed to step 5 of the five-step analysis to determine if plaintiff is capable of performing any work. The Clerk of the Court is directed to close this action.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         April 16, 2015